IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

JEFFERY WILLIAM PAUL )
        Petitioner )
v. ) DOCKET NO. 13-2987
)
UNITED STATES OF AMERICA )
        Respondent )

### RESPONSE TO MOTION FOR PERMISSION
### TO FILE A SUCCESSIVE 28 U.S.C. § 2255 PETITION

Pursuant to Eighth Circuit Rule 22B(c), comes now the United States of America, by and through the United States Attorney for the Western District of Arkansas, and for its response to petitioner's Motion for Permission to File a Successive 28 U.S.C. § 2255 Petition, states:

Petitioner, Jeffery William Paul ("Paul"), *pro se*, seeks permission from this Court to file a successive motion attacking his sentence pursuant to 28 U.S.C. § 2255 so that he can present new claims for relief based on actual innocence and ineligibility for the death penalty based on his age at the time of the murder.

### PROCEDURAL HISTORY

On June 25, 1997, Jeffrey William Paul ("Paul") was convicted of aiding and abetting the murder of Sherman Williams on federal land and sentenced to death. (Docket Entry # 238). The evidence adduced at Jeffery Paul's trial established that

1

on June 22,1995, Paul and an acquaintance, Trinity Ingle, followed Mr. Williams, an 82-year-old man, from downtown Hot Springs, Arkansas, to a walking trail in Hot Springs National Park. Paul and Ingle robbed and beat Mr. Williams, and then shot him in the head and shoulder.

On September 25, 1998, Paul filed a notice of appeal. (Docket Entry # 249). On appeal, Paul contended among other allegations that:

1) the prosecutor took inconsistent actions at his trial and at Ingles trial by arguing that the defendant in each trial pulled the trigger;

2) his rights under the Federal Death Penalty Act and the Constitution were violated because the jury failed to unanimously find and consider as a relevant mitigating factor that Ingle only received a life sentence;

3) the prosecution relied upon unadjudicated bad act evidence at trial and at sentencing in violation of his statutory and constitutional rights;

4) the government presented unnecessary and prejudicial testimony during the guilt phase of the trial regarding Williams life; and

5) there was error in the prosecutor's closing argument.

On June 27, 2000, the Eighth Circuit filed its opinion affirming Paul's conviction. *United States v. Paul*, 217 F.3d 989 (8th Cir.2000).

Paul then sought a *writ of certiorari* with the Supreme Court on January 29,

2001, which was denied on October 1, 2001. *Paul v. United States*, 534 U.S. 829 (2001). Subsequently, on February 19, 2002, the Supreme Court denied Paul's petition for rehearing. *Paul v. United States*, 534 U.S. 1156 (2002).

Thereafter, on December 17, 2002, Paul filed a Motion for New Trial or to Vacate Defendant's Conviction and Death Sentence Under 28 U.S.C. § 2255. (Docket Entry # 271). Among Paul's grounds for relief were:

1)      the government relied on inconsistent theories at Paul and Ingle's trials which violated Paul's right to a fair trial and due process;

2)      he was actually innocent of killing Mr. Williams;

3)      the jury failed to unanimously find and consider as a mitigating factor that Ingle was equally culpable and did not receive a death sentence; and

4)      a myriad of conclusory assertions of alleged prosecutorial misconduct only one claim of which he identified any purported factual basis (that witnesses were paid for their testimony).

The United States filed its response on June 2, 2003. (Docket Entry # 284). The Court denied Paul's motion pursuant to 28 U.S.C. § 2255 on January 31, 2005. (Docket Entry # 323).

On August 24, 2005, Paul filed a notice of appeal. (Docket Entry # 334). Paul further moved pursuant to 28 U.S.C. § 2253 and Fed. R. App. Pro. 22 (b)(1), for a

Certificate of Appealability("COA").  (Docket Entry # 338).

On September 6, 2005, the Eighth Circuit remanded Paul's case for consideration in light of *Tiedeman v. Benson*, 122 F.3d 518 (8th Cir.1997), with directions that if granted, the COA specify the issue or issues that are to be considered on appeal. (Docket Entry # 341).

After reviewing Paul's application for a COA and finding it to be essentially a restatement and re-argument of contentions the Court had previously addressed and rejected, the Court, on October 26, 2005, declined to issue a COA. (Docket Entry # 345).

However, on January 25, 2007, the Eighth Circuit granted Paul a COA to address three issues:

1)	Whether trial counsel were ineffective for failing to investigate and present evidence of Appellant's mental, medical and physical history;

2)	Whether trial counsel were ineffective for failing to investigate and assert Appellant's incompetence to stand trial; and

3)	Whether Appellant has a constitutional right to competence during federal habeas corpus proceedings and, if so, whether that constitutional right was violated.

(Docket Entry #351). On appeal, Paul argued:

1)	trial counsel were ineffective for failing to investigate and present evidence of his mental, medical, and physical history;

2)	trail counsel were ineffective for failing to investigate and assert his incompetence to stand trial;

3)	federal law guaranteeing meaningful access to the courts requires that a prisoner challenging a capital conviction and sentence be mentally competent during habeas corpus proceedings and that guarantee was violated in his case;

4)	his right to due process of law was violated when key government witnesses clandestinely received cash rewards after the jury was told no such rewards would be forthcoming; and

5)	improper *ex parte* communications between the government and the district court warranted assignment of a different judge pursuant to 28 U.S.C. § 2106.

The Eighth Circuit affirmed the Court's denial of Paul's petition on July 22, 2008. *Paul v. United States*, 534 F.3d 832 (8th Cir.2008). Paul then sought a *writ of certiorari* which was denied on October 5, 2009. *Paul v. United States*, 130 S.Ct. 51, 175 L.Ed.2d 43, 78 USLW 3171(2009).

On February 7, 2013, Paul, *pro se*, filed another Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the

§ 2255 Motion). (Docket Entry # 362).  In his § 2255 Motion,

Paul sought relief based on:

1) His actual innocence;

2) His sentence is unfair because his co-defendant was given a life sentence; and

3) Prosecutorial Misconduct.

The United States filed its response on March 8, 2013.  (Docket Entry # 365).

Thereafter, Paul began a flurry of *pro se* filings which included among others:

1) Motions for Order (Docket Entry # 366 and 370) in which he again raised issues of wrongful conviction and his co-defendant's conviction as defenses to his own sentence;

2) Motion for Effective Assistance, (Docket Entry # 367) and Motion for Effective Assistance of Counsel (Docket Entry # 371), in which he argued, amongst others, issues raised in his appeal, first § 2255 Motion and his then current pending second § 2255 motion;

3) Motion for Order of Estoppel of Criminal Complaint, (Docket Entry # 368) wherein he again raised issues of the alleged illegality of his conviction;

4) Motion for Due Process (Docket Entry # 375) claiming a right to certify an "exonerating affidavit"; and

5)	Motions for Emergency Injunctive Relief, (Docket Entry # 378, 379, and 380), in which Paul requested his wife be taken into custody and claimed that he would produce evidence of actual innocence and claiming in Docket Entry # 379 that his co-defendant gave an affidavit exonerating him from the crime for which he was convicted.

Each of Paul's motions were denied by the Court on June 17, 2013. (Docket Entry # 381). That same day, the magistrate judge issued his report and recommendation on Paul's *pro se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 and recommended the motion be denied. (Docket Entry # 382).

Paul then began another round of filings by first filing another *pro se* motion to vacate on June 27, 2013, claiming, among other issues, that he was under the age of 18 at the time of his conviction and that pursuant to *Roper v. Simmons*, 543 U.S. 551 (2005), minors are not competent to face the death penalty because it is cruel and excessive punishment. (Docket Entry # 383)

Next Paul filed a *pro se* Motion for Immediate Relief (Docket Entry # 384) and *pro se* Motion for Relief (Docket Entry # 385) claiming he was under age and not eligible for conviction under 18 U.S.C. § 1111 and requested a hearing on the issue (Docket Entry # 386).

Thereafter, Paul filed a *pro se* motion to amend in which he set forth his equations which the court should have used to properly determine his age at the time of the murder. (Docket Entry # 388).

On July 22, 2013, the magistrate issued his report and recommendation regarding Paul's Motion to Vacate (Docket Entry # 383), Motion for Immediate Relief (Docket Entry # 384), Motion for Relief (Docket Entry # 385), Motion for Hearing (Docket Entry # 387), and Motion to Amend (Docket Entry # 388), recommending these be denied and recommended the Clerk of the court be directed to accept no further *pro se* filings by Paul in this matter until further notice by the district court. (Docket Entry # 390). The magistrate based his recommendation on finding the district court has no obligation to consider Paul's *pro se* filings because he is represented by counsel and has no constitutional or statutory right to simultaneously proceed *pro se* and with benefit of counsel. Paul filed his *pro se* objections to the report and recommendation on July 31, 2013. (Docket Entry # 391).

On August 26, 2013, the district court issued its order adopting the magistrate's report and recommendation *in toto*. (Docket Entry # 392).

Paul now files a *pro se* Motion for Permission to File a Successive 28 U.S.C. § 2255 Petition in which he seeks to file a successive motion attacking his sentence pursuant to 28 U.S.C. § 2255 so he can present new claims for relief based on actual

innocence and ineligibility for the death penalty based on his age at the time of the murder.

LEGAL ANALYSIS

## A.      *Anti-Terrorism and Death Penalty Act Requirements*

Since Paul's Petition to file a new § 2255 was filed subsequent to the passing of the Anti-Terrorism and Death Penalty Act (April 1996) ("AEDPA"), it is subject to the "gate-keeping" provisions of AEDPA for second or successive motions brought pursuant to § 2255. 1996, Pub.L. No. 104-132;  28 U.S.C. § 2241 *et seq*; *Lindh v. Murphy*, 117 U.S. 2059 (1997).  The AEDPA severely curtailed the filing of second and successive § 2255 motions. *See* 28 U.S.C. §§ 2244(a)-(b), 2255.  Petitioners who have previously filed § 2255 motions face long odds proceeding under § 2255 a second time.  *United States ex rel. Perez v. Warden, FMC Rochester*, 286 F.3d 1059, 1061 (8th Cir. 2002).

Under AEDPA, a second or successive motion must be certified as provided in Section 28 U.S.C. § 2244 by a panel of the appropriate court of appeals to contain: (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the

Supreme Court, that was previously unavailable. 28 U.S.C. § 2255(h); *Rodgers v. United States*, 229 F.3d 704 (8th Cir. 2000).

Authorization to file a second or successive petition can only be granted where there is a *prima facie* showing that the application satisfies the aforementioned requirements of § 2255(h). *Johnson v. United States,* 720 F.3d 720 (8th Cir.2013). A *prima facie* showing in this context is "simply a sufficient showing of possible merit to warrant a fuller exploration by the district court." *Johnson*, 720 F.3d at 720 (citations omitted).

In this case, Paul claims newly discovered evidence by way of his codefendant's affidavit exonerates him of guilt in the murder of Mr. Williams. Additionally, Paul contends *Roper v. Simmons*, 543 U.S. 551 (2005), entitles him to pursue a successive collateral attack because it applies retroactively to his case. However, Paul's application is simply insufficient of possible merit to warrant a fuller exploration by the district court and his request to file a successive § 2255 motion should be denied.

**B.    Exoneration**

**1.    *Timeliness***

Under the AEDPA, a one year period of limitations from the date on which the facts supporting the claim or claims presented could have been discovered through

the exercise of due diligence has been imposed on the filing of motions for collateral relief by prisoners in federal custody. 28 U.S.C. § 2255(f)(4). Paul claims he has received a copy of an affidavit which exonerates him of guilt for aiding and abetting the murder of Mr. Williams. "To be entitled to invoke the statute of limitations contained in Section 2255(f)(4), this Court has said that a petitioner must show the existence of a new fact, while also demonstrating that he acted with diligence to discover the new fact." *Anjulo–Lopez v. United States*, 541 F.3d 814, 817 (8th Cir.2008) (internal quotation marks omitted). Due diligence does not require repeated exercises in futility or exhaustion of every imaginable option, but it does require " reasonable efforts." *Id.* at 818.

The new evidence Paul relies on consists of an unauthenticated declaration purported to have been made by his codefendant Trinity Ingle. This declaration is dated February 11, 2005. Paul states he received the declaration on approximately July 14, 2013. However, Paul's assertion does not in itself demonstrate he acted with diligence to discover the declaration or that this declaration could not have been presented sooner. Furthermore, nothing contained in the affidavit could be considered new as Paul and Ingle were codefendants. Thus, Paul knew or should have known Ingle could have offered such exculpatory testimony as to his role in the murder of Mr. Williams prior to his trial. Therefore, his claim is untimely.

**2.**    *New-Found Evidence, Standing Alone, Does Not Implicate a Constitutional Violation Warranting Habeas Relief*

Paul wants to raise a claim of actual innocence in a success federal habeas proceeding.  The Supreme Court has recognized that a showing of actual innocence may be a gateway to get past a procedural default in order for a court to consider a claim on the merits.  This is because procedurally barring a claim that establishes actual innocence is considered a fundamental miscarriage of justice.  *Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir.2005) (*citing Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also Clayton v. Roper*, 515 F.3d 784, 793 (8th Cir.2008); *Burton v. Dormire*, 295 F.3d 839, 848 (8th Cir.2002); *Meadows v. Delo*, 99 F.3d 280, 283 (8th Cir.1996).  Chief Justice Warren made this clear in *Townsend v. Sain*, 372 U.S. 293, 317 (1963):

> "Where newly discovered evidence is alleged in a habeas application, evidence which could not reasonably have been presented to the state trier of facts, the federal court must grant an evidentiary hearing. Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly

discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."

As the Court in Herrera stated, "[t]his rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact." *Herrera*, 506 U.S. at 400 (citations omitted). "Few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence." *Id*. at 401. Because freestanding claims of actual innocence are not properly considered by a federal habeas court, a claim of actual innocence is not proper in this instance.

Notwithstanding the statement that claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation, the Supreme Court in *Herrera* left open the question whether freestanding innocence claims are cognizable under federal law. *See Herrera*, 506 U.S. at 417. There the Court stated:

> We may assume, for the sake of argument in deciding this case, that in a capital case a truly persuasive demonstration of "actual innocence" made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim. But because of the very disruptive effect that entertaining claims of actual innocence would have on the need for finality in capital cases, and the enormous burden that having to retry cases based on often stale evidence would place on the States, the threshold

> showing for such an assumed right would necessarily be extraordinarily high. The showing made by petitioner in this case falls short of any such threshold.

*Herrera*, 506 U.S. at 417. Thus, while the Supreme Court has not affirmatively decided whether a persuasive demonstration of actual innocence after trial would render unconstitutional a conviction and sentence that is otherwise free of constitutional error, the Supreme Court has established, however, that the threshold for any such claim, if it were recognized, would be "extraordinarily high." *Id.*

In subsequent cases to *Herrera*, the Supreme Court has held "that prisoners asserting innocence as a gateway to default claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.' " *House v. Bell*, 547 U.S. 518, 536-37 (2006) (*quoting Schlup v. Delo*, 513 U.S. 298, 327 (1995)). This Court has stated a petitioner must satisfy a two-part test: 1) allegations of constitutional error must be supported with new reliable evidence that was not presented at trial and 2) petitioner must establish that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. *Bowman v. Gammon*, 85 F.3d 1339, 1346 (8th Cir.1996) (internal quotations omitted) As discussed below, Paul's claim of actual innocence based on his codefendant's unauthenticated declaration does not meet the standard adopted by the Supreme Court in *Schlup* and reiterated in *House*,

or that required by this Court, much less does it meet the "extraordinarily high" threshold of affirmative proof required to establish a successful freestanding claim of actual innocence as suggested in *Herrera*.

Paul's piece of new evidence is an unauthenticated declaration by Trinity Ingle which he alleges exonerates him of aiding and abetting the murder of Mr. Williams. Ingle and Paul were codefendant's who were tried separately. "Experience has shown, however, that such affidavits are to be treated with a fair degree of skepticism." *Herrera,* 506 U.S. at 424. Ingle was found guilty of aiding and abetting the murder of Mr. Williams and given a life sentence. *United States v. Ingle*, 157 F.3d 1147, 1149 (8th Cir.1998). Since Ingle has already been found guilty in Mr. William's murder, he faces no adverse consequences, under the protection against double jeopardy, as the result of any admission to the greater role in the murder.

Clearly the factual predicate of the claim, i.e. the murder was committed by Ingle with no involvement by Paul, could have been discovered previously. Paul himself would have been the obvious source of this information. Assuming he did not point the finger at Ingle himself, the fact remains Ingle was a codefendant, so his physical participation in the murder was known by defense counsel prior to trial. Also, the purported declaration does not explain the strong testimony of several of Paul's acquaintances that he confessed to his involvement in the crime along with

corroborating testimony by other witnesses. Additionally, the declaration fails to square with the jury's finding that Paul was more culpable than Ingle, because there was evidence that Paul and not Ingle shot Williams. Paul cannot possibly satisfy his burden of showing Ingle's declaration purporting to exonerate him of guilt is reliable or is of such convincing evidence that no reasonable factfinder could have found him guilty.

Paul's new evidence fails to demonstrate or substantiate a reasonable belief he is actually innocent under *Herrera*. A positive determination of actual innocence is rare and limited. *Herrera*, 506 U.S. at 404. The burden of proof is exceptionally high and permits only "truly persuasive demonstrations of actual innocence." *Id.* at 426-27. Which, in this case, Paul has failed to demonstrate and, therefore, the Court should deny his request to file a successive motion on his claim of actual innocence.

**C.** *Age*

Additionally, Paul asserts a claim that he is actually innocent of the death penalty based on the assertion that he was only 17 years, 9 months, and 27 days old on the date he aided and abetted in the murder of Mr. Williams. Paul seeks permission to file his successive motion under § 2255 based on the retroactive effect of *Roper v. Simmons*, 543 U.S. 551 (2005), which bars the execution of juvenile offenders. However, Paul's claim is procedurally defaulted and he has, otherwise, failed to

demonstrate he is actually innocent of the death penalty.

Under § 2255, a prisoner can obtain relief from a sentence imposed by a federal court that is contrary to the law. 28 U.S.C. § 2255(a). The statute of limitations for such a claim is one year and begins on "the date on which the right asserted was initially recognized by the Supreme Court." 28 U.S.C. § 2255(f)(3). Paul has filed his motion some 8 years after the Supreme Court decided *Roper* and, as such, his claim is procedurally defaulted. "Out of respect for finality, comity, and the orderly administration of justice, a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default." *Dretke v. Haley*, 541 U.S. 386, 388 (2004). However, the Supreme Court has recognized a petitioner may surmount this procedural default if the prisoner can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense or, in the capital sentencing context, of the aggravating circumstances rendering the inmate eligible for the death penalty. *Id.* (*citing Murray v. Carrier*, 477 U.S. 478 (1986) and *Sawyer v. Whitley*, 505 U.S. 333 (1992)).

"A petitioner is 'actually innocent' of the death penalty where he is ineligible for the death penalty." *Jackson v. Norris,* 615 F.3d 959, 963 n. 6 (8th Cir.2010) (*quoting Sasser v. Norris*, 553 F.3d 1121, 1126 (8th Cir.2009)). The Eighth and

17

Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed. *Roper v. Simmons*, 543 U.S. 551, 568 (2005). Thus, a juvenile offender is actually innocent of the death penalty and in order to prevail Paul "must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found [him] eligible for the death penalty under applicable [federal] law." *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992).

"Under the *Sawyer* standard, [Paul] must show that by clear and convincing evidence that but for the constitutional error, no reasonable juror would have found him eligible for the death penalty under [Federal] law." *Nave v. Delo*, 62 F.3d 1024, 1032 (8th Cir.1995), *cert. denied*, 517 U.S. 1214, 116 S.Ct. 1837, 134 L.Ed.2d 940 (1996). Paul can "succeed on his claim only 'by showing no aggravating circumstance existed, or by showing some other condition of eligibility was not met. Additional mitigating evidence does not satisfy the standard.' " Id. at 1033 (*quoting Shaw v. Delo*, 971 F.2d 181, 186 (8th Cir.1992), *cert. denied*, 507 U.S. 927, 113 S.Ct. 1301, 122 L.Ed.2d 690 (1993)).

In this case, Paul is unable to rely on *Roper* to support his claim because he was 18 years of age at the time he aided and abetted in the murder of Mr. Williams. Despite Paul's suggested calculation of his age, this Court recognized during Paul's

original appeal in this case that his birth certificate was offered into evidence during the penalty phase and that birth certificate established Paul was 18 years old at the time of the murder. *United States v. Paul*, 217 F.3d 989, 1000 (8th Cir.2000). "At the sentencing phase of trial, the defense introduced Appellant's birth certificate, indicating that he was born on September 2, 1976. T. 978, DE 1. Thus, at the time of the offense, on June 22, 1995, Mr. Paul was eighteen years old." Brief of Appellant at 51, *Paul*, 217 F.3d 989 (No. 98-3497).

Therefore, Paul is unable to demonstrate he was ineligible for the death penalty based on his age.

CONCLUSION

For the reasons and authorities cited herein this Court should deny Paul's Motion for Permission to File a Successive 28 U.S.C. § 2255 Petition and dismiss this case.

Respectfully submitted,

CONNER ELDRIDGE
UNITED STATES ATTORNEY

By:  /s/ Steven N. Snyder
Steven N. Snyder
Assistant U. S. Attorney
Ark. Bar Number 72101
414 Parker Avenue
Fort Smith, AR  72902
(479) 783-5125 / fax: (479) 441-0578

CERTIFICATE OF SERVICE

I, Steven N. Snyder, Assistant U.S. Attorney for the Western District of Arkansas, hereby certify that a true and correct copy of the foregoing response to petitioner's Motion for Permission to File a Successive 28 U.S.C. § 2255 Petition was mailed this 25th day of September, 2013 to:

Jeffery William Paul
Register No. 10517-042
USP Terre Haute
U.S. Penitentiary
P.O. Box 33
Terre Haute, IN  47808

/s/ Steven N. Snyder
Steven N. Snyder
Assistant U.S. Attorney