_In The 8th Circuit Court of Appeals_

Jeffery W. Paul
        Petitioner
V.
United States of America
Respondent

RECEIVED

NOV - 7 2013

I.S. COURT OF APPEALS
EIGHTH CIRCUIT

Dkt. 13. 2987

( capital case )

Pro'se

FILEI

NOV 0 7 2013

MICHAEL GANS
CLERK OF COURT

Motion for En Banc Review - 4of1191-2

Comes now the Petitioner Prose does submit this Motion (&1 Support documents with Petition for Constitutional due process; for En Banc Review; on a Ch. 153, §2255 appeal of an AEDPA case;
① Petitioner does submit this prose petition for enbanc review of denial of petition to order Western District of Arkansas to accept Prose petition in addition to Represented petitions because petitioner is learning disabled (&1 often not able to adequately express intent to Counsel (&1 that is a right; by Supreme Court grounds; see; Tennessee V. Lane (2004)(USC), (&1 Boumediene v Bush (2008); because Judges refusal to vacate Conviction by way of prima facie evidentiary standards is a due process violation; resulting from Toxic Submissions of Counsel; which are compiled to preserve appellate options; see... Cox V. Burger 398 F3d 1025,1031 (8th cir. 2005) citing Coleman v. Thompson 5c1 U.S. 722;750 (1991).
② Petitioner does move 8th Circuit to order Western district to vacate Conviction due to actual innocense (&1 does submit this motion; pursuant to Rule 35 General Provisions; rules of Appellate procedure; (a)(1)(2), asking Court to observe equal protection clause; see, Rouse v. Benson 193 F3d 936 (8th cir 1999), Court must apply Schlup standard in rulings (&1 Petitioner does attach affidavit which clearly indicates actual

(2) continued... innocense; schlup v. delo 513 U.S. 298, 115 S.Ct. 851, 130. L.Ed. 2d 808 (1995) (#) House v. Bell 547 U.S. 518 126 S.Ct 2064 165 LEd 2d I (2006) (#) McQuiggin v. Perkins 133 Sct. 1924, 1928, 1935-36 (#) n.4 185 L.Ed.2d 1019 (2013); setting standards petitioner clearly achieves; (ie) as follows; during trial of codefendant, he clearly excluded inculpatory conspiracy by asserting he had decided alone to commit a crime; (#) factually obligated prosecutor to assert alternate conspiracy theory which was effectively rebutted (#) resulted in net guilty verdict; see; U.S. v. Bieganowski 313 F3d 264 (5th cir 2002) (#) U.S. Rahseparian 231 F3d 1257 (10th cir 2000)... (#) prosecution clearly perjured the record by insisting on submitting exacerbating allegations of cause of death (#) Aggravating physical evidence that FBI experts exclusively testified to; including heinous injury; ballistics, palm (#) fingerprints; hair; (#) blood samples; none of which materially found true; as applied to complaint; see; Ripatone v. BioMattrix inc. 288 F3d 239 (5th cir. 2002), Daubert v. merrell Dow Pharmaceuticals, inc. 509 U.S. 579, 125 LEd 2d 469 113 Sct 2786 (1993) Rule 702 (FRE) admissibility. (#) U.S. v. Velarde-Gomez 269 F3d 1023 (9th cir 2001); exclusive physical evidence, definitions, thereof; entry upon the record constituting perjury... Petitioner also asserts that no future crime argued for occurred (#) no evidence of receipt or possession; duly was discovered; petitioner has no unaccountable money; retention of property from crime scene or firearms; which is standard pursuant to 6th Amendment; see; U.S. v. Bautista 252 F3d 141 (2nd cir. 2001);..

(3) Petitioner asserts that Court; Western District is Bias ($) refusing to rule is injurious ($) that duty to vacate Conviction is within the circuit Courts purview ($) could've occurred if prosecutorial misconduct had been discovered; petitioner claims, as follows; Prosecution repeatedly uses false evidence to object or enter into record statements which are patently false ($), that he may not do that ($) that office, ($) Judge is malfeasant for the same; Thompson v. Calderon 109 F3d 1358 (9th cir. 1896) ($) U.S. v. Goodson 165 F3d 610 (8th cir 1999) - Hayes v. Woodford 301 F3d 1054 (9th Cir 2002), which creates an exclusionary clause that should effectively estoppel that office from further Biasing Court; see, U.S. v. acosta-martinez 252 F3d 13 (1st cir. 2001) ($); (lacking any cause to think the District Court will act in my favor, having never reviewed the genuine record; petitioner does move the Court to disregard Prosecutions objection to actual innocence claim ($) by pass U.S. District Court; pursuant to impartiality; which is the right of the Circuit Court; See Justice v. U.S. 6 F3d 1474 (11th cir. 1993), due to Chronic; fundamental miscarriage of Justice, see; Lawrence v. Lensing 42 F3d 255 (5th cir 1994), ($) 1st, 4th, 5th, 6th, 7th, 8th, 9th, 10th, 14th, amendment violations, ($) Estelle v. Gamble 429 U.S. 97, 50 LEd 2d 251, 97 Set 285 (1976) ($) Haupt v. Dillard 17 F3d 285 (9th cir 1994) Liljerberg v. Health Serv. Corp. 486 U.S. 847 100 LEd2d, 855 108 Set 2194 (1988) ($) Ruiz v. Norris 71 F3d 1404 (8th cir 1995), Washington v. Delo 51 F3d 756 (8th cir 1995); secessive petitions ($) Caldwell v. Russel 181 F3d 731 (6th cir, 1999), Petitioner has Shown more than enough Cause; see ...Mickens v. Taylor 227 F3d 203 (4th cir. 2000) ...

(3) Continued... (1) Govt. has no right to object given; (1) evidence is not ambiguous (1) perpetrator credibly confesses by way of exclusion; 1996; (1) explicitly by confirming that, (verbal comments) 1999-2003; (1) then by affidavits 2005; see; Declaration of Trinity & Ingle. (1) Govt. of Virgin Islands v. Rivera 333 F3D 143 (3rd cir. 2003); Violation of 4th; amendment (et al); any civil rights; by perpetuation of fundamental Miscarriage of Justice.

(4. Petitioner claims More than Compelling actual innocence evidence was available by Judicial Admission alone; previous to the Cooperation of the perpetrator; (ie) Govt. argues exclusive injury as cause of Death; including Broken Neck; shotgun wound (1) Contusions which were impossible to determine; Not only did victim Not have any injury to Neck area other than effect of patholigist examination; but victims nose (1) teeth were all intact (1) valuables were found on the body; no liquor stores; pawn shops; restaurants or Shops were robbed (1) No car was sold or salvaged; the only substantial injury's were the gunshots Trinity fired (1) only property missing was what Trinity says he took; this petitioner did not receive or trade any property or conceive to commit any element of that offense (1) am rightfully claiming to be Tortured (1) actually innocent; believing I was to wait for associate who was going to check on a ride or job application, who witnessed an argument that escalated to a shooting I reported to person who had repeatedly indicated they'd acted in capacity as Vice Deputy; Youth Service (local law Enforcement) on that day, within 24 hrs; petitioner asserts that the weight of the error is sufficient to require vacate/dismissal of initial complaint; (1) that the error is plain; U.S. v. Fuchs 218 F3D 957 (9th cir. 2000) constituting a violation of my 1st through 14th Amendment rights; (1) the

(4.) continued; futures options for Congress / House Seats; Art. 1 Sec. 2; (b) Kitizenship; generally, by maintaining my captivity by way of false cause; U.S. v. Hsu 155 F3d 189 (3rd cir 1998); (b) torture; U.S. v. Kassouf 144 F3d 952 (6th cir 1998); U.S. v. Lanier 73 F3d 1380 (6th cir (1996) Bifulco V. U.S. 447 U.S. 381, 65 LEd2d 205, 100 Sct 2247 (1980), US v. Bass 404 U.S. 336, 92 Sct 515 (1971); Petitioner is not cause of disturbed shooters crime (b), was leaving scene; (d) should not have been tried for a murder duly (b) presently am embarrassed (b) enraged daily by presence of persons who refuse to adjust my captivity accordingly; with or without "letter from da'Judge"; the misconduct (b) evidentiary perjury is not a secret; Brown V. Artuz 283 F3d 492 (2nd cir. 2002); (b) with respect to the weight of the evidence, the Circuit Court has a duty to vacate the conviction in circumstance where Judge has repeatedly been exposed to misstatements (b) refuses to correct that, ~~whitehead~~ whitehead V. Cowan 263 F3d 708 (7th cir. 2001) (b) Thomas V. Hubbard 273 F3d 1164 (9th cir. 2001);.

(5.) Petitioner does, hereby Pro Se petition assert that trial was fundamentally flawed; by prejudicial joinder (b) violation of Confrontation Clause; (b) should be considered Double jeopardy Green V. U.S. 355 U.S. 184 2 LEd 2d 199 87 Sct 221 (1961); (b) U.S. V. McClain 187 F3d 1191 (9th cir. 1998) U.S. V. DiFrancesco 449 U.S 117 66 LEd 2d 328 101 Sct 426 (1980) (b) U.S. V. Angleton 314 F3d 767 (5th cir. 2002), (b) moves the court to dismiss due to violation of Public Record; conviction (b) exoneration statements of perpetrator; U.S. Ex REL Thompson V. Columbia / HCA Healthcare Corp. 125 F3d 899 (5th cir 1997) (b) Haines V. Kerner 404 U.S. 519 30 LEd2d 652 92 Sct 594 (1972); (b) Sevencan V. Herbert 316 F3d 76 (2nd cir. 2002); (b) That the §2255 Habeas Corpus 28 T. , is appropriate because the prison

⑤ is Federal ∅; conviction is Federal but conduct established by affidavit ∅; physical evidence excludes offense; (Garland) V. U.S. 837 F2D 1563 (11th cir 1988) ∅; Howard V. U.S. 135 F3D 506 (7th cir. 1998); ∅; vacating the conviction in this case is merited ∅; within purview of this Court ∅; should've been done the first time because the district is dilatory; ∅; I am innocent; Edwards v. U.S. 114 F3D 1083 (11th cir. 1997). Petitioner asserts that retroactivity is guaranteed relevant to the U.S. Supreme Court because violation of rights is fundamental miscarriage of Justice ∅; hereby; Rodgers v. U.S 229 F3D 704 (8th cir 2000) ∅; Ivey v. Pontesso 328 F3D 1057 (9th cir 2003) that petitioners learning disability ∅; spousal misconduct caused a psychological breakdown which inhibited Counsels performance; when he should've been prompted; causing antipathy from prosecution who attempted to get innocent petitioner to agree to a life penalty; violation of my 8th Amendment right; Paradise v. CCI warden (36 F3D 331; 2nd cir 1998; which occurred during a second trial that was in session while a sustained objection was made because the verbal declaration of Trinity Ingle; 1996, as related to his attorneys was available ∅; being obstructed, violation of my 4th; 5th; 6th, 7th; 9th. 10th; 14th Amendment (∅) Art 4 of The U.S. Constitution; Hughes v. Johnson 191 F3D 607 (5th cir 1999), Schaff v. Snyder 190 F3D 513 (7th cir. 1999); U.S v. Hinton 218 F3D 910 (8th cir. 2000); ∅; lee v. city of Los Angeles 250 F3D 668 (9th cir. 2001); ∅; U.S. v. Miller 263 F3D 1 (2nd cir. 2001); ∅; U.S. v. Espino 317 F3D 788 (8th cir. 2003) ∅; Ross v. Ward. 165 F3D 793 (10th cir. 1999). (∅) U.S. v. Choy 309 F3D 602 (9th cir 2002);



6.) Petitioner asserts that including me Jeffery Paul; ("Jeff"; an indictment was a violation of my 4th amendment (£) is evident in the Declaration of Trinity E. Ingle; pg. A02253 - A02255; which has been certified as genuine(£) was received as that; exonerating evidence through the US. Postal Service by lawyer your court appointed. I understand that I was accused of confessing to a receipt of stolen property but claims that was the result of a comment made, relevant to Alford) pleas; which I Denied; (£) that possibility Government might give killer opportunity to transpose guilt to me; the actual 1st reporting "CI"; was gross misconduct; US. v. Choy 309 F3d 602 (9th Cir 2002); I did not remove anything from that crime scene (£) was told that car was his Moms. several times; he "Trint" was disturbed; petitioner asserts prosecutions use of perjured forensics (£) repeated statements from the perpetrator achieves reasonable doubt (£) that the 8th circuit should've ordered District Court to vacate the conviction (£) remedy a plainly unconstitutional conviction, (£) fundamental Miscarriage of Justice; (£) had the duty to do so in this case; due to Bias of District, ~~S/three~~ see... Silviera v. Lockyer 312 F3d 1052 (9th Cir 2002) (£) T. 28; Ch. 153; §2241(a)(c)(3); §2245, §2246, §2247, §2249; (£) §2255 (1, a); To Remedy a ongoing criminal injury (£), comply with what no reasonable person can deny is the fundamental Rights guaranteed by our Constitution.

Respectfully Submitted,

*Jeffery Paul W*

Jeffery Paul 10517042
P.O. Box 33, USP Terre Haute IN.
47808

Certificate of service; I Jeffery Paul do swear this was placed in mail on 11/4/13. to US Postal Service

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

| | | |
|---|---|---|
| JEFFERY WILLIAM PAUL | ) | |
| Petitioner | ) | |
| v. | ) | DOCKET NO. 13-2987 |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| Respondent | ) | |

## RESPONSE TO MOTION FOR PERMISSION
## TO FILE A SUCCESSIVE 28 U.S.C. § 2255 PETITION

Pursuant to Eighth Circuit Rule 22B(c), comes now the United States of

America, by and through the United States Attorney for the Western District of

Arkansas, and for its response to petitioner's Motion for Permission to File a

Successive 28 U.S.C. § 2255 Petition, states:

Petitioner, Jeffery William Paul ("Paul"), *pro se*, seeks permission from this

Court to file a successive motion attacking his sentence pursuant to 28 U.S.C. § 2255

so that he can present new claims for relief based on actual innocence and ineligibility

for the death penalty based on his age at the time of the murder.

## PROCEDURAL HISTORY

On June 25, 1997, Jeffrey William Paul ("Paul") was convicted of aiding and

abetting the murder of Sherman Williams on federal land and sentenced to death.

(Docket Entry # 238). The evidence adduced at Jeffery Paul's trial established that

1

Appellate Case: 13-2987    Page: 1    Date Filed: 09/25/2013 Entry ID: 4079296

on June 22,1995, Paul and an acquaintance, Trinity Ingle, followed Mr. Williams, an 82-year-old man, from downtown Hot Springs, Arkansas, to a walking trail in Hot Springs National Park. Paul and Ingle robbed and beat Mr. Williams, and then shot him in the head and shoulder.

On September 25, 1998, Paul filed a notice of appeal. (Docket Entry # 249). On appeal, Paul contended among other allegations that:

1)    the prosecutor took inconsistent actions at his trial and at Ingles trial by arguing that the defendant in each trial pulled the trigger;

2)    his rights under the Federal Death Penalty Act and the Constitution were violated because the jury failed to unanimously find and consider as a relevant mitigating factor that Ingle only received a life sentence;

3)    the prosecution relied upon unadjudicated bad act evidence at trial and at sentencing in violation of his statutory and constitutional rights;

4)    the government presented unnecessary and prejudicial testimony during the guilt phase of the trial regarding Williams life; and

5)    there was error in the prosecutor's closing argument.

On June 27, 2000, the Eighth Circuit filed its opinion affirming Paul's conviction. *United States v. Paul*, 217 F.3d 989 (8th Cir.2000).

Paul then sought a *writ of certiorari* with the Supreme Court on January 29,

2

Appellate Case: 13-2987    Page: 2    Date Filed: 09/25/2013 Entry ID: 4079296

2001, which was denied on October 1, 2001. *Paul v. United States*, 534 U.S. 829 (2001). Subsequently, on February 19, 2002, the Supreme Court denied Paul's petition for rehearing. *Paul v. United States*, 534 U.S. 1156 (2002).

Thereafter, on December 17, 2002, Paul filed a Motion for New Trial or to Vacate Defendant's Conviction and Death Sentence Under 28 U.S.C. § 2255. (Docket Entry # 271). Among Paul's grounds for relief were:

1) the government relied on inconsistent theories at Paul and Ingle's trials which violated Paul's right to a fair trial and due process;

2) he was actually innocent of killing Mr. Williams;

3) the jury failed to unanimously find and consider as a mitigating factor that Ingle was equally culpable and did not receive a death sentence; and

4) a myriad of conclusory assertions of alleged prosecutorial misconduct only one claim of which he identified any purported factual basis (that witnesses were paid for their testimony).

The United States filed its response on June 2, 2003. (Docket Entry # 284). The Court denied Paul's motion pursuant to 28 U.S.C. § 2255 on January 31, 2005. (Docket Entry # 323).

On August 24, 2005, Paul filed a notice of appeal. (Docket Entry # 334). Paul further moved pursuant to 28 U.S.C. § 2253 and Fed. R. App. Pro. 22 (b)(1), for a

3

Appellate Case: 13-2987    Page: 3    Date Filed: 09/25/2013    Entry ID: 4079298

Certificate of Appealability("COA"). (Docket Entry # 338).

On September 6, 2005, the Eighth Circuit remanded Paul's case for consideration in light of *Tiedeman v. Benson*, 122 F.3d 518 (8th Cir.1997), with directions that if granted, the COA specify the issue or issues that are to be considered on appeal. (Docket Entry # 341).

After reviewing Paul's application for a COA and finding it to be essentially a restatement and re-argument of contentions the Court had previously addressed and rejected, the Court, on October 26, 2005, declined to issue a COA. (Docket Entry # 345).

However, on January 25, 2007, the Eighth Circuit granted Paul a COA to address three issues:

1)      Whether trial counsel were ineffective for failing to investigate and present evidence of Appellant's mental, medical and physical history;

2)      Whether trial counsel were ineffective for failing to investigate and assert Appellant's incompetence to stand trial; and

3)      Whether Appellant has a constitutional right to competence during federal habeas corpus proceedings and, if so, whether that constitutional right was violated.

(Docket Entry #351). On appeal, Paul argued:

4

Appellate Case: 13-2967    Page: 4    Date Filed: 09/25/2013 Entry ID: 4079296

1) trial counsel were ineffective for failing to investigate and present evidence of his mental, medical, and physical history;

2) trail counsel were ineffective for failing to investigate and assert his incompetence to stand trial;

3) federal law guaranteeing meaningful access to the courts requires that a prisoner challenging a capital conviction and sentence be mentally competent during habeas corpus proceedings and that guarantee was violated in his case;

4) his right to due process of law was violated when key government witnesses clandestinely received cash rewards after the jury was told no such rewards would be forthcoming; and

5) improper *ex parte* communications between the government and the district court warranted assignment of a different judge pursuant to 28 U.S.C. § 2106.

The Eighth Circuit affirmed the Court's denial of Paul's petition on July 22, 2008. *Paul v. United States*, 534 F.3d 832 (8th Cir.2008). Paul then sought a *writ of certiorari* which was denied on October 5, 2009. *Paul v. United States*, 130 S.Ct. 51, 175 L.Ed.2d 43, 78 USLW 3171(2009).

On February 7, 2013, Paul, *pro se*, filed another Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the

5

§ 2255 Motion). (Docket Entry # 362). In his § 2255 Motion,

Paul sought relief based on:

1) His actual innocence;

2) His sentence is unfair because his co-defendant was given a life sentence; and

3) Prosecutorial Misconduct.

The United States filed its response on March 8, 2013. (Docket Entry # 365).

Thereafter, Paul began a flurry of *pro se* filings which included among others:

1) Motions for Order (Docket Entry # 366 and 370) in which he again raised issues of wrongful conviction and his co-defendant's conviction as defenses to his own sentence;

2) Motion for Effective Assistance, (Docket Entry # 367) and Motion for Effective Assistance of Counsel (Docket Entry # 371), in which he argued, amongst others, issues raised in his appeal, first § 2255 Motion and his then current pending second § 2255 motion;

3) Motion for Order of Estoppel of Criminal Complaint, (Docket Entry # 368) wherein he again raised issues of the alleged illegality of his conviction;

4) Motion for Due Process (Docket Entry # 375) claiming a right to certify an "exonerating affidavit"; and

6

5) Motions for Emergency Injunctive Relief, (Docket Entry # 378, 379, and 380), in which Paul requested his wife be taken into custody and claimed that he would produce evidence of actual innocence and claiming in Docket Entry # 379 that his co-defendant gave an affidavit exonerating him from the crime for which he was convicted.

Each of Paul's motions were denied by the Court on June 17, 2013. (Docket Entry # 381). That same day, the magistrate judge issued his report and recommendation on Paul's *pro se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 and recommended the motion be denied. (Docket Entry # 382).

Paul then began another round of filings by first filing another *pro se* motion to vacate on June 27, 2013, claiming, among other issues, that he was under the age of 18 at the time of his conviction and that pursuant to *Roper v. Simmons*, 543 U.S. 551 (2005), minors are not competent to face the death penalty because it is cruel and excessive punishment. (Docket Entry # 383)

Next Paul filed a *pro se* Motion for Immediate Relief (Docket Entry # 384) and *pro se* Motion for Relief (Docket Entry # 385) claiming he was under age and not eligible for conviction under 18 U.S.C. § 1111 and requested a hearing on the issue (Docket Entry # 386).

7

Thereafter, Paul filed a *pro se* motion to amend in which he set forth his equations which the court should have used to properly determine his age at the time of the murder. (Docket Entry # 388).

On July 22, 2013, the magistrate issued his report and recommendation regarding Paul's Motion to Vacate (Docket Entry # 383), Motion for Immediate Relief (Docket Entry # 384), Motion for Relief (Docket Entry # 385), Motion for Hearing (Docket Entry # 387), and Motion to Amend (Docket Entry # 388), recommending these be denied and recommended the Clerk of the court be directed to accept no further *pro se* filings by Paul in this matter until further notice by the district court. (Docket Entry # 390). The magistrate based his recommendation on finding the district court has no obligation to consider Paul's *pro se* filings because he is represented by counsel and has no constitutional or statutory right to simultaneously proceed *pro se* and with benefit of counsel. Paul filed his *pro se* objections to the report and recommendation on July 31, 2013. (Docket Entry # 391).

On August 26, 2013, the district court issued its order adopting the magistrate's report and recommendation *in toto*. (Docket Entry # 392).

Paul now files a *pro se* Motion for Permission to File a Successive 28 U.S.C. § 2255 Petition in which he seeks to file a successive motion attacking his sentence pursuant to 28 U.S.C. § 2255 so he can present new claims for relief based on actual

8

innocence and ineligibility for the death penalty based on his age at the time of the murder.

## LEGAL ANALYSIS

### A.    *Anti-Terrorism and Death Penalty Act Requirements*

Since Paul's Petition to file a new § 2255 was filed subsequent to the passing of the Anti-Terrorism and Death Penalty Act (April 1996) ("AEDPA"), it is subject to the "gate-keeping" provisions of AEDPA for second or successive motions brought pursuant to § 2255. 1996, Pub.L. No. 104-132; 28 U.S.C. § 2241 *et seq*; *Lindh v. Murphy*, 117 U.S. 2059 (1997). The AEDPA severely curtailed the filing of second and successive § 2255 motions. *See* 28 U.S.C. §§ 2244(a)-(b), 2255. Petitioners who have previously filed § 2255 motions face long odds proceeding under § 2255 a second time. *United States ex rel. Perez v. Warden, FMC Rochester*, 286 F.3d 1059, 1061 (8th Cir. 2002).

Under AEDPA, a second or successive motion must be certified as provided in Section 28 U.S.C. § 2244 by a panel of the appropriate court of appeals to contain: (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the

9

Supreme Court, that was previously unavailable. 28 U.S.C. § 2255(h); *Rodgers v. United States*, 229 F.3d 704 (8th Cir. 2000).

Authorization to file a second or successive petition can only be granted where there is a *prima facie* showing that the application satisfies the aforementioned requirements of § 2255(h). *Johnson v. United States*, 720 F.3d 720 (8th Cir.2013). A *prima facie* showing in this context is "simply a sufficient showing of possible merit to warrant a fuller exploration by the district court." *Johnson*, 720 F.3d at 720 (citations omitted).

In this case, Paul claims newly discovered evidence by way of his codefendant's affidavit exonerates him of guilt in the murder of Mr. Williams. Additionally, Paul contends *Roper v. Simmons*, 543 U.S. 551 (2005), entitles him to pursue a successive collateral attack because it applies retroactively to his case. However, Paul's application is simply insufficient of possible merit to warrant a fuller exploration by the district court and his request to file a successive § 2255 motion should be denied.

**B.    Exoneration**

**1.    *Timeliness***

Under the AEDPA, a one year period of limitations from the date on which the facts supporting the claim or claims presented could have been discovered through

10

the exercise of due diligence has been imposed on the filing of motions for collateral relief by prisoners in federal custody. 28 U.S.C. § 2255(f)(4). Paul claims he has received a copy of an affidavit which exonerates him of guilt for aiding and abetting the murder of Mr. Williams. "To be entitled to invoke the statute of limitations contained in Section 2255(f)(4), this Court has said that a petitioner must show the existence of a new fact, while also demonstrating that he acted with diligence to discover the new fact." *Anjulo–Lopez v. United States*, 541 F.3d 814, 817 (8th Cir.2008) (internal quotation marks omitted). Due diligence does not require repeated exercises in futility or exhaustion of every imaginable option, but it does require " reasonable efforts." *Id.* at 818.

The new evidence Paul relies on consists of an unauthenticated declaration purported to have been made by his codefendant Trinity Ingle. This declaration is dated February 11, 2005. Paul states he received the declaration on approximately July 14, 2013. However, Paul's assertion does not in itself demonstrate he acted with diligence to discover the declaration or that this declaration could not have been presented sooner. Furthermore, nothing contained in the affidavit could be considered new as Paul and Ingle were codefendants. Thus, Paul knew or should have known Ingle could have offered such exculpatory testimony as to his role in the murder of Mr. Williams prior to his trial. Therefore, his claim is untimely.

11

Appellate Case: 13-2987   Page: 11   Date Filed: 09/25/2013 Entry ID: 4079296

**2. *New-Found Evidence, Standing Alone, Does Not Implicate a Constitutional Violation Warranting Habeas Relief***

Paul wants to raise a claim of actual innocence in a success federal habeas proceeding. The Supreme Court has recognized that a showing of actual innocence may be a gateway to get past a procedural default in order for a court to consider a claim on the merits. This is because procedurally barring a claim that establishes actual innocence is considered a fundamental miscarriage of justice. *Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir.2005) (*citing Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also Clayton v. Roper*, 515 F.3d 784, 793 (8th Cir.2008); *Burton v. Dormire*, 295 F.3d 839, 848 (8th Cir.2002); *Meadows v. Delo*, 99 F.3d 280, 283 (8th Cir.1996). Chief Justice Warren made this clear in *Townsend v. Sain*, 372 U.S. 293, 317 (1963):

> "Where newly discovered evidence is alleged in a habeas application, evidence which could not reasonably have been presented to the state trier of facts, the federal court must grant an evidentiary hearing. Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly

12

discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."

As the Court in Herrera stated, "[t]his rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact." *Herrera*, 506 U.S. at 400 (citations omitted). "Few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence." *Id.* at 401. Because freestanding claims of actual innocence are not properly considered by a federal habeas court, a claim of actual innocence is not proper in this instance.

Notwithstanding the statement that claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation, the Supreme Court in *Herrera* left open the question whether freestanding innocence claims are cognizable under federal law. *See Herrera*, 506 U.S. at 417. There the Court stated:

> We may assume, for the sake of argument in deciding this case, that in a capital case a truly persuasive demonstration of "actual innocence" made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim. But because of the very disruptive effect that entertaining claims of actual innocence would have on the need for finality in capital cases, and the enormous burden that having to retry cases based on often stale evidence would place on the States, the threshold

13

> showing for such an assumed right would necessarily be extraordinarily high. The showing made by petitioner in this case falls short of any such threshold.

*Herrera*, 506 U.S. at 417. Thus, while the Supreme Court has not affirmatively decided whether a persuasive demonstration of actual innocence after trial would render unconstitutional a conviction and sentence that is otherwise free of constitutional error, the Supreme Court has established, however, that the threshold for any such claim, if it were recognized, would be "extraordinarily high." *Id.*

In subsequent cases to *Herrera*, the Supreme Court has held "that prisoners asserting innocence as a gateway to default claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.' " *House v. Bell*, 547 U.S. 518, 536-37 (2006) (*quoting Schlup v. Delo*, 513 U.S. 298, 327 (1995)). This Court has stated a petitioner must satisfy a two-part test: 1) allegations of constitutional error must be supported with new reliable evidence that was not presented at trial and 2) petitioner must establish that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. *Bowman v. Gammon*, 85 F.3d 1339, 1346 (8th Cir.1996) (internal quotations omitted) As discussed below, Paul's claim of actual innocence based on his codefendant's unauthenticated declaration does not meet the standard adopted by the Supreme Court in *Schlup* and reiterated in *House*,

14

or that required by this Court, much less does it meet the "extraordinarily high" threshold of affirmative proof required to establish a successful freestanding claim of actual innocence as suggested in *Herrera*.

Paul's piece of new evidence is an unauthenticated declaration by Trinity Ingle which he alleges exonerates him of aiding and abetting the murder of Mr. Williams. Ingle and Paul were codefendant's who were tried separately. "Experience has shown, however, that such affidavits are to be treated with a fair degree of skepticism." *Herrera*, 506 U.S. at 424. Ingle was found guilty of aiding and abetting the murder of Mr. Williams and given a life sentence. *United States v. Ingle*, 157 F.3d 1147, 1149 (8th Cir.1998). Since Ingle has already been found guilty in Mr. William's murder, he faces no adverse consequences, under the protection against double jeopardy, as the result of any admission to the greater role in the murder.

Clearly the factual predicate of the claim, i.e. the murder was committed by Ingle with no involvement by Paul, could have been discovered previously. Paul himself would have been the obvious source of this information. Assuming he did not point the finger at Ingle himself, the fact remains Ingle was a codefendant, so his physical participation in the murder was known by defense counsel prior to trial. Also, the purported declaration does not explain the strong testimony of several of Paul's acquaintances that he confessed to his involvement in the crime along with

15

corroborating testimony by other witnesses. Additionally, the declaration fails to square with the jury's finding that Paul was more culpable than Ingle, because there was evidence that Paul and not Ingle shot Williams. Paul cannot possibly satisfy his burden of showing Ingle's declaration purporting to exonerate him of guilt is reliable or is of such convincing evidence that no reasonable factfinder could have found him guilty.

Paul's new evidence fails to demonstrate or substantiate a reasonable belief he is actually innocent under *Herrera*. A positive determination of actual innocence is rare and limited. *Herrera*, 506 U.S. at 404. The burden of proof is exceptionally high and permits only "truly persuasive demonstrations of actual innocence." *Id*. at 426-27. Which, in this case, Paul has failed to demonstrate and, therefore, the Court should deny his request to file a successive motion on his claim of actual innocence.

## C.    *Age*

Additionally, Paul asserts a claim that he is actually innocent of the death penalty based on the assertion that he was only 17 years, 9 months, and 27 days old on the date he aided and abetted in the murder of Mr. Williams. Paul seeks permission to file his successive motion under § 2255 based on the retroactive effect of *Roper v. Simmons*, 543 U.S. 551 (2005), which bars the execution of juvenile offenders. However, Paul's claim is procedurally defaulted and he has, otherwise, failed to

16

demonstrate he is actually innocent of the death penalty.

Under § 2255, a prisoner can obtain relief from a sentence imposed by a federal court that is contrary to the law. 28 U.S.C. § 2255(a). The statute of limitations for such a claim is one year and begins on "the date on which the right asserted was initially recognized by the Supreme Court." 28 U.S.C. § 2255(f)(3). Paul has filed his motion some 8 years after the Supreme Court decided *Roper* and, as such, his claim is procedurally defaulted. "Out of respect for finality, comity, and the orderly administration of justice, a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default." *Dretke v. Haley*, 541 U.S. 386, 388 (2004). However, the Supreme Court has recognized a petitioner may surmount this procedural default if the prisoner can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense or, in the capital sentencing context, of the aggravating circumstances rendering the inmate eligible for the death penalty. *Id.* (*citing Murray v. Carrier*, 477 U.S. 478 (1986) and *Sawyer v. Whitley*, 505 U.S. 333 (1992)).

"A petitioner is 'actually innocent' of the death penalty where he is ineligible for the death penalty." *Jackson v. Norris*, 615 F.3d 959, 963 n. 6 (8th Cir.2010) (*quoting Sasser v. Norris*, 553 F.3d 1121, 1126 (8th Cir.2009)). The Eighth and

17

Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed. *Roper v. Simmons*, 543 U.S. 551, 568 (2005). Thus, a juvenile offender is actually innocent of the death penalty and in order to prevail Paul "must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found [him] eligible for the death penalty under applicable [federal] law." *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992).

"Under the *Sawyer* standard, [Paul] must show that by clear and convincing evidence that but for the constitutional error, no reasonable juror would have found him eligible for the death penalty under [Federal] law." *Nave v. Delo*, 62 F.3d 1024, 1032 (8th Cir.1995), *cert. denied*, 517 U.S. 1214, 116 S.Ct. 1837, 134 L.Ed.2d 940 (1996). Paul can "succeed on his claim only 'by showing no aggravating circumstance existed, or by showing some other condition of eligibility was not met. Additional mitigating evidence does not satisfy the standard.' " Id. at 1033 (*quoting Shaw v. Delo*, 971 F.2d 181, 186 (8th Cir.1992), *cert. denied*, 507 U.S. 927, 113 S.Ct. 1301, 122 L.Ed.2d 690 (1993)).

In this case, Paul is unable to rely on *Roper* to support his claim because he was 18 years of age at the time he aided and abetted in the murder of Mr. Williams. Despite Paul's suggested calculation of his age, this Court recognized during Paul's

18

original appeal in this case that his birth certificate was offered into evidence during the penalty phase and that birth certificate established Paul was 18 years old at the time of the murder. *United States v. Paul*, 217 F.3d 989, 1000 (8th Cir.2000). "At the sentencing phase of trial, the defense introduced Appellant's birth certificate, indicating that he was born on September 2, 1976. T. 978, DE 1. Thus, at the time of the offense, on June 22, 1995, Mr. Paul was eighteen years old." Brief of Appellant at 51, *Paul*, 217 F.3d 989 (No. 98-3497).

Therefore, Paul is unable to demonstrate he was ineligible for the death penalty based on his age.

## CONCLUSION

For the reasons and authorities cited herein this Court should deny Paul's Motion for Permission to File a Successive 28 U.S.C. § 2255 Petition and dismiss this case.

Respectfully submitted,

CONNER ELDRIDGE
UNITED STATES ATTORNEY

By:   /s/ *Steven N. Snyder*
Steven N. Snyder
Assistant U. S. Attorney
Ark. Bar Number 72101
414 Parker Avenue
Fort Smith, AR 72902
(479) 783-5125 / fax: (479) 441-0578

19

## CERTIFICATE OF SERVICE

I, Steven N. Snyder, Assistant U.S. Attorney for the Western District of Arkansas, hereby certify that a true and correct copy of the foregoing response to petitioner's Motion for Permission to File a Successive 28 U.S.C. § 2255 Petition was mailed this 25th day of September, 2013 to:

> Jeffery William Paul
> Register No. 10517-042
> USP Terre Haute
> U.S. Penitentiary
> P.O. Box 33
> Terre Haute, IN 47808

/s/ Steven N. Snyder
Steven N. Snyder
Assistant U.S. Attorney

20

| From: | 8cc-cmecf-nda@ck8.uscourts.gov |
|---|---|
| Sent: | Wednesday, September 25, 2013 10:39 AM |
| To: | Slader, Janie (USAARW) |
| Subject: | 13-2987 Jeffery Paul v. United States "Response filed for successive habeas petition" |

\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

## Eighth Circuit Court of Appeals

### Notice of Docket Activity

The following transaction was filed on 09/25/2013

**Case Name:** Jeffery Paul v. United States

**Case Number:** 13-2987

**Document(s):** Document(s)

**Docket Text:**
RESPONSE in opposition to petition for successive habeas petition [4073609-2] filed by Attorney Mr. Steven Northup Snyder, Sr. for Respondent United States of America , w/service 09/25/2013. [4079296] [13-2987] (SNS)

### Notice will be electronically mailed to:

Mr. Steven Northup Snyder, Sr., Assistant U.S. Attorney: steve.snyder@usdoj.gov, janie.slader@usdoj.gov

### Notice will be mailed to:

Mr. Jeffery William Paul
FEDERAL CORRECTIONAL INSTITUTION
P.O. Box 33
Terre Haute, IN 47808-0000

The following document(s) are associated with this transaction:
**Document Description:** Response to Motion to file a Successive 2255 Petition
**Original Filename:** PAUL - Response to Successive 2255 - 8th Circuit.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=09/25/2013] [FileNumber=4079296-0]

APPEARANCE
## UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

NO. _____13-2987_____

United States
_____

vs.

Jeffery Paul
_____

**The Clerk will enter my appearance as Counsel for the following party(s):**
**(please specify)**_____

Appellee
_____

s/ Steven N. Snyder
_____
**ATTORNEY NAME**

United States Attorney's Office - WDAR          (479) 783-5125
_____          _____
**FIRM NAME**                              **OFFICE PHONE NUMBER**

414 Parker Avenue                              (479) 441-0578
_____          _____
**STREET or P.O. BOX**                     **FACSIMILE NUMBER**

Fort Smith, AR 72901                          Steve.Snyder@usdoj.gov
_____          _____
**CITY, STATE, ZIP**                        **E-MAIL ADDRESS**

## CERTIFICATE OF SERVICE

☑ I hereby certify that on 9/20/2013 _____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

☑ I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:
Jeffery William Paul, Federal Correctional Institution, 10517-042, P.O. Box 33, Terre Haute, IN 47808

_____

s/ Steven N. Snyder
_____

\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

Eighth Circuit Court of Appeals

Notice of Docket Activity

The following transaction was filed on 09/20/2013

Case Name:      Jeffery Paul v. United States
Case Number:   13-2987
Document(s):    Document(s)

Docket Text:
APPEARANCE filed by Steven N. Snyder for Respondent United States of America w/service 09/20/2013 [4077871] [13-2987] (SNS)

Notice will be electronically mailed to:

Mr. Steven Northup Snyder, Sr., Assistant U.S. Attorney: steve.snyder@usdoj.gov, janie.slader@usdoj.gov

Notice will be mailed to:

Mr. Jeffery William Paul
FEDERAL CORRECTIONAL INSTITUTION
P.O. Box 33
Terre Haute, IN 47808-0000

The following document(s) are associated with this transaction:
Document Description: Appearance Form
Original Filename: PAUL Jeffery - appearance form SNS.pdf
Electronic Document Stamp:
[STAMP acecfStamp_ID=1105112566 [Date=09/20/2013] [FileNumber=4077871-0]
[08c89f9b0629b77658d59fc50530cf1069356019308757b281afe0019e731ed080fddbb0703181690268fb6a463e8bf33c48812e7702f605126b4cea2482fbe3]]

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

---

No: 13-2987

---

Jeffery William Paul

Petitioner

v.

United States of America

Respondent

---

Appeal from U.S. District Court for the Western District of Arkansas - Hot Springs

---

## JUDGMENT

Before COLLOTON, BEAM, and BENTON, Circuit Judges.

The petition for authorization to file a successive habeas application in the district court is denied.

The mandate shall issue forthwith.

October 01, 2013

Order Entered at the Direction of the Court:
Clerk, U.S. Court of Appeals, Eighth Circuit.

---

/s/ Michael E. Gans

# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

No: 13-2987

Jeffery William Paul

Petitioner

v.

United States of America

Respondent

---

Appeal from U.S. District Court for the Western District of Arkansas - Hot Springs

---

## MANDATE

In accordance with the judgment of 10/01/2013, and pursuant to the provisions of Federal Rule of Appellate Procedure 41(a), the formal mandate is hereby issued in the above-styled matter.

October 01, 2013

Clerk, U.S. Court of Appeals, Eighth Circuit

## Appeal Documents

6:96-cr-60022-JLH USA v. Paul
**CASE CLOSED on 02/01/2005**

CLOSED,AWL,CRT LV to
FILE,DEATH,R/R

### U. S. District Court

### Western District of Arkansas

## Notice of Electronic Filing

The following transaction was entered on 10/1/2013 at 11:38 AM CDT and filed on 10/1/2013
**Case Name:**           USA v. Paul
**Case Number:**        6:96-cr-60022-JLH
**Filer:**
**Document Number:** 393

**Docket Text:**
**MANDATE of USCA: The petition for authorization to file a successive habeas application in the district court is denied as to as to Jeffery William Paul. (Attachments: # (1) 8USCA Judgment, # (2) 8USCA Cover Letter)(mfr)**

**6:96-cr-60022-JLH-1 Notice has been electronically mailed to:**

W. M. Cromwell, AUSA kenny.elser@usdoj.gov, janie.slader@usdoj.gov, kathleen.d.hogan@usdoj.gov

Steven N. Snyder Steve.Snyder@usdoj.gov, Kathleen.D.Hogan@usdoj.gov, janie.slader@usdoj.gov

Robert L McGlasson rlmcglasson@comcast.net

**6:96-cr-60022-JLH-1 Notice has been delivered by other means to:**

Jeffery William Paul(Terminated)
10517-042
TERRE HAUTE-USP
U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

Jennifer Merrigan
Federal Public Defender
District of Delaware
715 N. King St.
Wilmington, DE 19801

Margaret P. Griffey

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

---

No: 13-2987

---

Jeffery William Paul

Petitioner

v.

United States of America

Respondent

---

Appeal from U.S. District Court for the Western District of Arkansas - Hot Springs

---

## JUDGMENT

Before COLLOTON, BEAM, and BENTON, Circuit Judges.

The petition for authorization to file a successive habeas application in the district court is denied.

The mandate shall issue forthwith.

October 01, 2013

Order Entered at the Direction of the Court:
Clerk, U.S. Court of Appeals, Eighth Circuit.

---

/s/ Michael E. Gans

# UNITED STATES DISTRICT COURT
## OFFICE OF THE CLERK
### WESTERN DISTRICT OF ARKANSAS
### FAYETTEVILLE DIVISION

35 E. Mountain, Room 510
FAYETTEVILLE, ARKANSAS 72701
FAY_info@arwd.uscourt.gov

(479) 521-6980
FAX (479) 575-0774

October 23, 2013

Jeffery Paul
#10517042
P.O. Box 33
Terre Haute, IN  47808

RE:  96-60022  USA  vs.  PAUL

Dear Mr. Paul,

This office is in receipt of your enclosed document.  We are returning this document to you per the instructions in the Order of Honorable Jimm Larry Hendren dated 8/26/13.  A copy of the order is also enclosed.

Thank you,

U.S. DISTRICT CLERK

Enclosures

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

UNITED STATES OF AMERICA                                         PLAINTIFF

v.                              No. 96-60022

JEFFERY WILLIAM PAUL                                             DEFENDANT

## ORDER

Now on this 26th day of August, 2013, the above referenced matter comes before the Court for consideration of the **Magistrate Judge's Report and Recommendation** (document #390) and the **Motion to Object to Report & Recommendation, dated 7/22/2013 by Hon. Barry A. Bryant** (document #391). The Court, being well and sufficiently advised, finds and orders as follows:

1. On June 23, 1997, Jeffery William Paul was convicted of murder for the killing of a man in Hot Springs National Park, Hot Springs, Arkansas. Paul was sentenced to death as a result of that conviction in the United States District Court for the Western District of Arkansas.

2. A direct appeal and post-conviction proceedings followed. Counsel was appointed by this Court to represent Paul on all post-conviction matters. Specifically, Robert McGlasson was appointed on January 30, 2002; and, Sean O'Brien was appointed on September 15, 2003. In addition, Jennifer Merrigan was appointed on February 26, 2007 by the United States Court of Appeals for the Eighth Circuit.

3. All three court-appointed counsel remain counsel of record for Paul as of this date.

4. On February 7, 2013, Paul filed a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. The motion to vacate was filed pro se. Following that filing, Paul has filed numerous

other miscellaneous motions, all acting pro se. His court-appointed counsel remain his counsel of record in this case, but did not join in any of the recent pro se filings.

5. On July 17, 2013, this Court referred this matter to Honorable Barry A. Bryant, United States Magistrate Judge, for a report and recommendation as to whether the Court should address the pro se filings of Paul when he remains represented by counsel.

6. The instant Report and Recommendation finds that the Court has no obligation to consider pro se filings by litigants represented by counsel and recommends the Court decline to do so in this case going forward.

7. Paul has filed objections to the Report and Recommendation. The objections offer neither law nor fact requiring departure from the Report and Recommendation. Based upon the Magistrate Judge's thorough and well-reasoned comments, the Court finds that there is no merit to Paul's arguments and the same should be overruled.

8. In light of the foregoing, the Report and Recommendation will be approved and adopted as stated.

**IT IS THEREFORE ORDERED** that Paul's objections, entitled **Motion to Object to Report & Recommendation, dated 7/22/2013 by Hon. Barry A. Bryant** (document #391), **are overruled.**

**IT IS FURTHER ORDERED** that the **Magistrate Judge's Report and Recommendation** (document #390) **is adopted** *in toto* **as follows:**

*       the **Motion to Vacate** (document #383), **Motion for**

**Immediate Relief** (document #384), **Motion for Relief** (document #385), **Motion for Hearing** (document #387), and **Motion to Amend** (document #388) are **denied;**

\*      the Clerk of this Court is directed to forward copies of all of the *pro se* filings made by Paul since February 7, 2013 to his counsel of record; and,

\*      the Clerk of this Court is directed to accept no further *pro se* filings by Paul in this matter until further notice by this Court.

IT IS SO ORDERED.

/s/ Jimm Larry Hendren
JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE

-3-

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No: 13-2987

Jeffery William Paul

Petitioner

v.

United States of America

Respondent

---

Petition for permission to file a Successive Habeas Petition

---

## ORDER

Petitioner's motion for reconsideration is denied.

October 31, 2013

Order Entered at the Direction of the Court:
Clerk, U.S. Court of Appeals, Eighth Circuit.

---

/s/ Michael E. Gans

As discussed elsewhere in this Brief, Paul was only eighteen years old at the time, and was thus younger than Ingle. T. 978, DE 1 (birth certificate of Jeffery Paul); App. 501, 514 (Ingle nineteen years old at time of offense); see also Claim II.

Importantly here, Jeffery Paul's prior criminal history was far less substantial than that of Trinity Ingle. While Paul had a relatively minor criminal history, Ingle had five prior felony convictions, including two burglary convictions and two firearms convictions. T. 567; App. 472-73.

The government charged and tried both Mr. Paul's case, and that of his co-defendant, Trinity Ingle, on a theory of aiding and abetting, 18 U.S.C. §2, although in each trial, the government contradictorily argued that the defendant on trial had actually shot the victim. Mr. Ingle received a life sentence for the same offenses less than three weeks before Mr. Paul received a death sentence.

4.    Evidence of Equal Culpability – Trinity Ingle Trial

The government's evidence of Ingle's primary role in the offense was more substantial than that presented or argued by the government during Mr. Paul's trial. At Ingle's trial, government witness Derrick Bell testified that Ingle had repeatedly told him, at least five times, that he personally had hit and shot Sherman Williams, in the head and chest. App. 312-13, 320.[8] Ingle told Bell he was the one who struck the victim immediately after they first confronted him and asked for the time. App. 316.

## 1. Argument

The government pursued inconsistent theories of the facts at the co-defendant's trials, claiming in each that the defendant on trial had shot the victim, Sherman Williams. At the trial of co-defendant Trinity Ingle, the government argued to the jury that Mr. Ingle shot the victim in the head: "Trinity Ingle put the barrel of a .38 behind Mr. Williams' left ear and he pulled the trigger." App. at 256. The government also argued repeatedly throughout Mr. Ingle's trial that the evidence indicated Ingle had in fact hit the victim and shot him in the head. App. 269, 452, 461-62.

Furthermore, as noted above, evidence presented at both trials established Ingle as the ringleader in these crimes:

»Ingle said he struck the victim first, App. 316;

»Ingle said he taped the victim's hands and feet, App. 319;

»Ingle chose to shoot the victim because he peeked at them, App. 319-20;

»Ingle said he shot the victim himself in the head and chest, App. 320;

»Ingle drove the car, T. 683, App. 258;

»Ingle paid for food and motel afterwards, App. 258;

-40-

»Ingle got rid of the gun, T. 1085, 1107; and,

»Ingle got rid of the car, App. 321.

Confirming Ingle's role as the driver, the only item of direct, physical evidence in the entire case was the fingerprint of co-defendant Trinity Ingle, found on the ashtray of the victim's car. T. 777-780. While Appellant did not argue at trial that this evidence established no involvement on his part, it does highlight the leadership role Ingle played in this offense, including being in command of the car after the incident.

According to a doctor with the State Medical Examiner's office who performed the autopsy on the body recovered from the National Park, the victim died of a gunshot wound to the head. T. 597. Relying upon dental records, he was able positively to identify the body as being that of Sherman Williams. T. 591. Although the chest area showed no signs of external damage, an x-ray revealed small lead shot present. T. 596. There was no evidence of trauma to the head or neck area other than that caused by the entrance and exit wounds from the bullet that caused the death of the victim. T. 598-600.

government's medical examiner testified that there was no evidence of any other trauma to the victim's head or neck other than the single gunshot wound. T. 598-99. In fact all trauma to the victim's head was associated with and caused by "exit wounding," namely, wounding caused as the bullet left the victim's skull. T. 600.

(3.)

Other evidence linking Mr. Paul to the offense included a pair of "Reebok" brand sneakers, which were apparently owned by Mr. Paul, but had been loaned to Mr. Ingle and were recovered from Ingle at the time of his arrest. T. 567-68. Although examined, no blood was found on the sneakers. T. 608.

-12-

The government also contended that Appellant had blood on his shoes and/or clothes on the day of the offense. However, two government witnesses who saw him that day did not see any blood whatsoever on Mr. Paul. T. 670, 683,

While the government contended that Mr. Paul said he had kicked the victim in the head, T. 472, other evidence belied this fact. First, FBI Agent Tom Ross testified, and the government's serologist confirmed, that the Reebok shoes, GE 27 (T. 608), which Mr. Paul was supposedly wearing at the time of the offense had no trace of blood on them. T. 567-68, 608.

(4.)

SPECIAL MAIL - OPEN ONLY IN THE
PRESENCE OF THE INMATE PERSON
ENTITLED TO INVOKE PROTECTION OF
SPECIAL MAIL 28 C.F.R. § 540.18

SPECIAL MAIL - OPEN ONLY IN THE
PRESENCE OF THE INMATE PERSON
ENTITLED TO INVOKE PROTECTION OF
SPECIAL MAIL 28 C.F.R. § 540.18

4780BX0033

Jeffery Paul, # 10517-042
United States Penitentiary
P.O.Box 33
Terre Haute, IN 47808-0033

US POSTAGE
FIRST-CLASS
0625000724692 3
19801
$0.450

B16341.16

X 03-417L

OFFICE of the Jennifer B. Wen Sen, dildarine.
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF DELAWARE
800 KING STREET, SUITE 200
WILMINGTON, DE 19801



OFFICE OF THE FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF DELAWARE

EDSON A. BOSTIC
FEDERAL PUBLIC DEFENDER

KARL D. SCHWARTZ
CHIEF, CAPITAL HABEAS UNIT

JENNIFER A. MERRIGAN
ASSISTANT DEFENDER,
CAPITAL HABEAS UNIT

July 11, 2013

Jeffery Paul, # 10517-042
United States Penitentiary
P.O.Box 33
Terre Haute, IN 47808-0033

Jeff,

      It was good to talk to you today. I am enclosing the affidavit you requested. I ordered you the Almanac and Dictionary, you should receive them soon. I know that you have requested other books, and I have let the team know.

Sincerely,

Jennifer Merrigan

Enclosures

MS. Jennifer Merrigan
800 King Street, Suite 200
Wilmington, DE. 19801

(Cell Ph) 302/573/6010

Western District of
Arkansas; Hot Springs Division
US. U. Ingle
Case no. 97 3443
(57 F3d 1147)
(8th cir. 1998)

County of Jefferson

State of Texas

## Declaration of Trinity E. Ingle

My name is Trinity Ingle. I am over the age of 18 and competent to make the declarations contained herein.

On June 22, 1995 me and Jeff were downtown in Hot Springs by the Arlington Hotel. I was wanting to rob a shop downstairs. Jeff was high and was pretty much just following me where I was going to. I was high too otherwise I would not have been wanting to rob a shop in broad daylight. But so we're standing outside of the mall when Mr. Williams drove by. I had not slept for days and was high on Methamphetamine which can make you paranoid and was making me paranoid after ten days of it and not sleeping. It was one of those times where if things had gone different, if a cop car had come by or something like that, I would have just left, but when Mr. Williams drove by he looked at me and I just locked in on him. In my paranoia I knew he had seen the gun in my waistband and knew that now he knew what I was thinking to do by robbing the shop downstairs. So when he got out of the car I told Jeff to come on and follow me. At this point Jeff did not know what I was doing and so he wasn't arguing any about it yet. As far as I knew, Jeff did not know that I had a gun. I didn't tell Jeff about my suspicions of Mr. Williams, nor did I say anything to him about what I planned to do.

A02253

I followed Mr. Williams up the trail and Jeff was following me. I stopped

him by asking him if he had the time. After he told us the time I pulled the gun out

and told him to give up everything he had. When he didn't, I hit him and kicked

him on the ground. By this time, Jeff was getting very nervous. He was trying to

get me to leave, saying, "come on, let's go." But I wasn't about to leave, but I still

had the gun in my hand and Jeff knew it.

I told Jeff to keep quiet and I tied the guy up with the tape. Then Jeff and I

started back down the trail but when I looked back at him the guy was looking right

at me. I turned to go back but Jeff grabbed me by the arm and said, "let's just leave

him and get out of here." Jeff kept arguing with me but I yanked free of him

holding me. I still had the gun in my hand and Jeff was looking at it as I held it in

his direction. Even though Jeff didn't know what it was I was going back up the

mountain for, I made sure he knew if he put his hands on me again trying to stop

me I would have shot him, too, and it would have been two people left up on that

mountain.

So I walked back up the trail and asked the guy if he was going to call the

cops. He said no but of course I knew he was lying. So I stood over him and shot

him in the chest but one shot was rat shot which I had forgot was in the chamber. I

heard Jeff yelling at me to stop, but I turned back around and shot Mr. Williams

2

A02254

with the real bullet in the head.

Everything else I believe is already known which followed that.

The gun I got from a burglary off Higden Ferry Road, New Oscar Point and Amity. It was a brown and yellow house and part of the yard was fences. It was in the morning that I broke into the house and found the guns in a closet. I think I recall that they were in a box on the closet floor. I also took some things out of the ice box and some change and silver dollars. Actually I had gotten two guns from there, a .357 and the .38 I used to shoot Mr. Williams. The .357 I had already sold.

Under penalty of perjury I hereby swear that the foregoing is true and correct to the best of my information and belief.

Trinity E. Ingle

Dated this __11__ day of February, 2005.

3

A02255

Unit Mgr. Bayless;

Will You Please review these pgs. ($) note that I did get confirmation from my Attorney that Trinity Ingle did write ($) sign that affidavit, Titled, Declaration of Trinity E. Ingle; ($) I have a copy of this in my central file.

I would like (BOP) (S.IS) or appropriate staff to present the Affidavit ($) certify he confirms the text ($) signature; Because for some reason, not disclosed to me; the courts refusing to acknowledge any obligation to release or lower the penalty; for 7.5 yrs now.

Please confirm my lawyers are My lawyers ($) that this Affidavit is genuine ($) note that I am indigent due to Copyright infringement ($) suffering medical ($) psychological injury due to bad dental, dermal, vision etc ($) the rape of my wife estrangement etc etera.

Mr. Paul—
The BOP/SIS is not authorized to authenticate the document. Therefore, the BOP can not state the document is genuine.
—MBayless, 8/2/13

please respond ($) return papers.
Sincerely; Jeffery Paul
(10517042)
4172cell/
C Range
7/31/2013